UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-------------------------------------------------------x
NATHANIEL FELBER, et al.          :
                                  :    **Civil Action No. 19-cv-1027 (ABJ)**
                  Plaintiffs,     :
                                  :
         -against-                :
                                  :
ISLAMIC REPUBLIC OF IRAN,         :
                                  :
                  Defendant.      :
-------------------------------------------------------x

## PLAINTIFFS' RESPONSE TO THE COURT'S
## DECEMBER 17, 2021, INVITATION TO THE DEPARTMENT OF STATE

Given that the Department of State has not yet communicated its views in response to this Court's December 17, 2021, invitation, ECF No. 34 (requesting the State Department's views, if any, by January 31, 2022), Plaintiffs respectfully provide the following case law and record citations to try to further assist the Court in its review of Plaintiffs' Proposed Findings of Fact and Conclusions of Law, ECF Nos. 30 (redacted) and 31, and Motion for Judgment by Default, ECF No. 33.

This Court addressed two questions to the State Department:

1. The Department of State's position as to whether the terrorism exception to sovereign immunity applies when a U.S. national is injured while they are on duty as a member of a foreign military.

2. The Department of State's position as to whether Iran's support of Hamas can support liability under FSIA when Hamas has not claimed responsibility for the particular attack at issue.

ECF No. 34 at 2. Plaintiffs address these two issues below.

### I. Courts Have Held that Terror Victims Injured While Serving in a Foreign Military May Recover Under the FSIA and Anti-Terrorism Act

The Court first asked for the State Department's position on "whether the terrorism exception to sovereign immunity applies when a U.S. national is injured while they are on duty as

a member of a foreign military." *Id.* at 2. A court in this District answered in the affirmative in more extenuating circumstances than those implicated here. In *Estate of Steinberg v. Islamic Republic of Iran*, No. 17-cv-1910 (RCL), 2019 WL 6117722 (D.D.C. Nov. 18, 2019), the victim, Max Steinberg, was "an American citizen fighting for the Israeli army" and "engaged in a combat mission" when his "armored vehicle" was ambushed by the U.S.-designated Foreign Terrorist Organization ("FTO") HAMAS in 2014. *Id.* at *1, 5.

The court recognized that "[u]nlike paradigm FSIA cases in which innocent civilians are unsuspectingly murdered by terrorists, these circumstances involve a volunteer soldier engaged in a combat mission under the flag of a foreign military," but nonetheless concluded that "[p]erhaps surprisingly, none of those facts disqualifies Max's killing from being 'extrajudicial'" under 28 U.S.C. § 1605A(a)(1). *Id.* at *5. The court confirmed that it "need not decide whether the animating spirit behind the state sponsor of terrorism exception envisioned plaintiffs like Max—the law as written recognizes his death as the result of an extrajudicial killing at the hands of known terrorists." *Id.*

Moreover, the FSIA contains no "act of war" exception to liability for injuries incurred by eligible plaintiffs engaged in any form of military conflict like that contained in the Anti-Terrorism Act, 18 U.S.C. § 2333, *et seq.* (the "ATA"). Even under the ATA, however, Congress recently demonstrated its intent to ensure that attacks perpetrated by FTOs cannot qualify for the "act of war" exception by expressly eliminating it in the Anti-Terrorism Clarification Act of 2018 (the "ATCA") in circumstances where the attack at issue was carried out by a designated FTO. *See* Pub. L. 115-253, § 2 (codified at 18 U.S.C. § 2331). And even before the ATCA's passage, courts asserted jurisdiction under the ATA for claims brought by the families of dual citizens who were killed or injured in terrorist attacks while serving in the Israeli military. *See, e.g., Weiss v. Arab*

*Bank, PLC*, No. 06-cv-1623 (NG)(VVP), 2007 WL 4565060, *2, 6 (E.D.N.Y. Dec. 21, 2007).

Here, conversely, Plaintiff Nathaniel Felber was serving in the Israeli military but was *not* engaged in combat operations when he was injured—instead, he was standing at a bus stop with other soldiers and civilians when he was shot and critically wounded. *See* expert declaration submitted by Arieh Dan Spitzen in support of Plaintiffs' Motion for Judgment by Default ("Spitzen Declaration" or "Spitzen Decl."), ECF No. 28, ¶ 43. Thus, the reasoning in *Steinberg* (and *Weiss*) applies even more strongly here.

## II. HAMAS Officially Claimed Responsibility for the December 13, 2018, Attack Even Though It Did Not Do So Immediately or in a Standalone Communiqué

The Court also asked for the State Department's position on whether "Iran's support of Hamas can support liability under FSIA when Hamas has not claimed responsibility for the particular attack at issue." ECF No. 34 at 2. However, Plaintiffs showed that HAMAS *did* ultimately claim responsibility for the December 13, 2018, attack at issue (the "December 13 Attack") through various announcements on its official websites.

Specifically, the Spitzen Declaration demonstrated that even while Asem al-Barghuthi, the HAMAS operative who committed the December 13 Attack, was still in hiding after that attack, key HAMAS websites described the attack as one carried out by the "Resistance" – a phrase used by HAMAS to indicate its responsibility for an attack. *See id.*, ¶ 54.[1] Once al-Barghuthi was arrested on January 8, 2019, HAMAS again published the announcement that the attack had been carried out by "the Resistance" on its website, *see id.*, ¶ 55, and also issued an announcement identifying him as one of its operatives, *see id.*, ¶ 98. And on June 24, 2020, the day that al-

---

[1] The court in *Linde v. Arab Bank*, *PLC* considered whether website captures of HAMAS claims of responsibility were admissible, subject to proper authentications, and concluded that they were. It also ruled that Israeli Military Court convictions could be admissible evidence of HAMAS's responsibility for certain attacks. *See Linde*, No. 04-cv-2799 (BMC)(VVP), 2014 WL 12558572, *2-3 (E.D.N.Y. Aug. 1, 2014).

3

Barghuthi was sentenced to life in prison, official HAMAS websites acknowledged him as a "Qassami prisoner," *i.e.*, a prisoner who is a member of the Qassam Brigades, HAMAS's operational terrorist wing. *See id.*, ¶¶ 13, 57, 100. Also on that day, HAMAS's leader, Ismail Haniyeh, called al-Barghuthi's mother to express appreciation on behalf of himself and HAMAS for her son's sacrifice. *See id.*, ¶ 57. Mr. Spitzen explained that HAMAS's increasingly open acknowledgments of responsibility – commencing with announcements indicating HAMAS responsibility on key HAMAS websites while al-Barghuthi was still in hiding, and culminating (once he was sentenced) in the announcement on its official websites that al-Barghuthi was its terror operative and had committed the attack – is due to HAMAS's policy of protecting its operatives over its immediate public relations efforts. *See id.*, ¶¶ 50-51.

Mr. Spitzen provided expert testimony to other courts in this District regarding HAMAS's claims of responsibility for attacks it committed which were less explicit than the one HAMAS made here, and as reflected below, these courts have accepted his conclusions. For example, in *Braun v. Islamic Republic of Iran*, Mr. Spitzen testified that a vehicular attack which killed two pedestrians and injured another was perpetrated by HAMAS, basing his conclusion on the facts that "'Hamas recognized [the perpetrator] Abd al-Rahman al-Shaludi as its operative' prior to the Attack, and following the Attack issued a death notice indicating that Hamas 'mourns the death of its son, the martyr, the hero Abd al-Rahman Idris al-Shaludi, who carried out the daring action in Jerusalem.'" *See Braun*, 228 F. Supp. 3d 64, 76 (D.D.C. 2017) (citing and crediting Mr. Spitzen's testimony). More recently, in *Force v. Islamic Republic of Iran*, the court credited Mr. Spitzen's attribution of an October 13, 2015, massacre on a bus which injured nine passengers and killed two others to HAMAS, based on his testimony regarding "Abu Ghanem's [one of the two perpetrators] documented membership in Hamas, the sophistication of the attack (which involved

4

the purchase of a firearm and an escape plan), and the skill with which Abu Ghanem wielded his firearm," as well as HAMAS's subsequent call to "carry out further attacks similar to the Bus 78 massacre." *See Force*, 464 F. Supp. 3d 323, 347-49 (D.D.C. 2020) (internal quotation marks and citations omitted).

Moreover, claims of responsibility are but one data point used by terrorism experts in determining whether a particular terrorist group is responsible for a particular attack. Here, Mr. Spitzen reviewed the (i) Israeli Military Court filings documenting al-Barghuthi's multiple arrests and convictions, (ii) Israeli Military Court indictments and related filings for Asef Ummar Saleh al-Barghuthi (al-Barghuthi's brother who was convicted of undergoing military training with weapons under the guidance of their father, a Qassam Brigades operative), for Anas Mashal (a convicted HAMAS operative whose terror cell al-Barghuthi joined in 2007), and for multiple HAMAS operatives al-Barghuthi recruited into the terror cell he founded in 2018, (iii) Israeli intelligence and military reports regarding the December 13 Attack, and (iv) statements made by HAMAS on its official websites and forums. *See* Spitzen Decl., ¶¶ 10, 75, 79 & n.52, 88, 132. Based on these records, and the methodology he delineated, *id.* ¶ 10, Mr. Spitzen constructed the profile, background, motivation, and modus operandi of the HAMAS terror cell and perpetrator that carried out the December 13 Attack, and he concluded that HAMAS was responsible for committing the attack, *id.*, ¶¶ 11, 46.

Specifically, Mr. Spitzen described how Asem al-Barghuthi was the founder and commander of a HAMAS Qassam Brigades cell, and had previously been convicted of terrorist activities several times, for which he served long prison terms. *See id.*, ¶¶ 31-32, 81. His father is a senior HAMAS terrorist operative, along with multiple other family members who were also HAMAS operatives. *See id.*, ¶¶ 77-78, 83-84. He was first arrested in 2005 and confessed to being

5

a member of HAMAS's Islamic Bloc, a student organization HAMAS uses to recruit terrorist operatives for the Qassam Brigades. *See id.*, ¶¶ 60 n.35, 79, 85-86. In January 2007, three months after his first release from prison, al-Barghuthi joined a HAMAS Qassam Brigades terrorist cell whose operatives attempted to kidnap Jews to exchange for Palestinian prisoners in Israeli jails, which Mr. Spitzen described as one of HAMAS's top priorities, requiring logistical and political coordination by HAMAS. Al-Barghuthi was arrested again and sentenced to over eleven years in prison. *See id.*, ¶¶ 60 n.35, 88–89 & n.61, 91, 93. After that arrest, HAMAS's official website identified him as a HAMAS prisoner and officially acknowledged his organizational affiliation. *See id.*, ¶ 92.

When he was again released from prison in April 2018, his family held a reception where HAMAS flags were prominently displayed, and al-Barghuthi was recorded giving a speech and confirming that he belonged to HAMAS's Qassam Brigades. *See id.*, ¶ 96. In fact, when he first rose to make his speech, he pointed to the HAMAS bandana that was wrapped around his neck and publicly proclaimed: "[I]ndeed, I am a Hamas man." *Id.*, ¶ 97. Mr. Spitzen testified that at this point, he began to establish another Qassam Brigades terrorist cell, and his organizational affiliation with HAMAS was common knowledge. *See id.*, ¶¶ 94-95.

Al-Barghuthi's modus operandi and motivation behind the December 13 Attack also supports the conclusion that HAMAS committed the attack. Four days prior to the attack, on December 9, 2018, he, along with his brother and Qassam Brigades cell partner, Saleh al-Barghuthi, perpetrated another HAMAS terrorist attack outside the town of Ofra, which resulted in the murder of a baby and injuries to several other civilians (the "Ofra Attack"). *See id.*, ¶¶ 31, 33-34. Three days after the Ofra Attack, on December 12, 2018, Saleh al-Barghuthi was killed in a clash with the Israel Defense Forces. *See id.*, ¶ 35. According to Asem al-Barghuthi's subsequent

indictment, his brother's death further inspired him to carry out the December 13 Attack. *See id.*, ¶¶ 36, 38. Mr. Spitzen also noted that the timing of both terrorist attacks that Asem al-Barghuthi planned was consistent with the practice of HAMAS operatives carrying out terrorist attacks to commemorate the period between December 9 and 14, when the organization was originally founded in 1987. *See id.*, ¶¶ 36 n.14, 68-69. Still further indication that the December 13 Attack was perpetrated by HAMAS was the sophisticated planning and weapons used, as well as the purchase of a vehicle to carry out the attack. *See id.*, ¶¶ 42, 66-67, 70-71.

Accordingly, there is ample and robust evidence in the record to establish that HAMAS is responsible for committing the attack in which Nathaniel Felber was injured. Plaintiffs will be prepared to provide any further briefing requested by this Court or to appear in person or telephonically if the Court has any further questions.

Dated: February 7, 2022

                                                Respectfully submitted,

                                                OSEN LLC

By:    /s/ Dina Gielchinsky
           Gary M. Osen (DC Bar No. NJ009)
           Ari Ungar (DC Bar No. NJ008)
           Michael J. Radine (DC Bar No. NJ015)
           Dina Gielchinsky (DC Bar No. NJ011)
           190 Moore Street, Suite 272
           Hackensack, NJ 07601
           (201) 265-6400

           Attorneys for Plaintiffs